## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARC WATERMAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **COMPLAINT FOR VIOLATION OF** |
| v. | : | **THE SECURITIES EXCHANGE ACT** |
| | : | **OF 1934** |
| RADIUS HEALTH, INC., WILLARD H. | : | |
| DERE, CATHERINE FRIEDMAN, JEAN- | : | Case No. _____ |
| PIERRE GARNIER, OWEN HUGHES, | : | |
| JENNIFER A. JARRETT, KELLY MARTIN, | : | JURY TRIAL DEMANDED |
| SEAN MURPHY, MACHELLE SANDERS, | : | |
| SUSAN VISSERS and ANDREW C. VON | : | |
| ESCHENBACH, | : | |
| | : | |
| Defendants. | : | |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF ACTION

1.      On June 23, 2022, Radius Health, Inc. ("Radius" or the "Company") announced that it will be acquired by Ginger Acquisition Inc. ("Parent") and Ginger Merger Sub, Inc. ("Purchaser") (the "Proposed Transaction").

2.      On June 23, 2022, Radius's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, Purchaser commenced a tender offer (the "Tender Offer") to purchase all of Radius's outstanding common stock for $10.00 in cash per share.  The Tender Offer is set to expire on August 10, 2022.

3.     On July 13, 2022, defendants filed a recommendation statement (the "Recommendation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.     The Recommendation Statement omits material information with respect to the Proposed Transaction, which renders the Recommendation Statement false and misleading, in violation of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the Exchange Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8.     Plaintiff is and has been continuously throughout all times relevant hereto the owner of Radius common stock.

9.     Defendant Radius is a Delaware corporation and maintains its principal executive offices at 22 Boston Wharf Road, 7th Floor, Boston, MA 02210.  Radius's common stock trades on the NASDAQ under the ticker symbol "RDUS."

10.     Defendant Willard H. Dere is a director of the Company.

11.     Defendant Catherine Friedman is a director of the Company.

12.     Defendant Jean-Pierre Garnier is a director of the Company.

13.     Defendant Owen Hughes is Chairman of the Board of the Company.

14.     Defendant Jennifer A. Jarrett is a director of the Company.

15.     Defendant Kelly Martin is President and Chief Executive Office of the Company.

16.     Defendant Sean Murphy is a director of the Company.

17.     Defendant Machelle Sanders is a director of the Company.

18.     Defendant Susan Vissers Lisa is a director of the Company.

19.     Defendant Andrew C. von Eschenbach is a director of the Company.

20.     The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

21.     Radius is a global biopharmaceutical company that focuses on addressing medical needs in the areas of bone health, neuro-orphan diseases, and oncology.

22.     On June 23, 2022, Radius's Board caused the Company to enter into the Merger Agreement.

23.     The press release announcing the Proposed Transaction provides as follows:

Radius Health, Inc. ("Radius" or the "Company") (Nasdaq: RDUS) today announced that it has entered into a definitive agreement to be acquired by Gurnet Point Capital ("Gurnet Point") and Patient Square Capital ("Patient Square") in a transaction valued at approximately $890 million, including the assumption of debt and assuming full payment of the CVR (Contingent Value Right). Debt financing for this transaction will be provided by OrbiMed Advisors, LLC.

Under the terms of the merger agreement, an entity jointly owned by Gurnet Point and Patient Square will initiate a tender offer to acquire all of the outstanding shares of Radius for $10.00 per share in cash plus a CVR of $1.00 per share payable upon TYMLOS® (abaloparatide) net sales reaching $300 million (inclusive of U.S. sales and Japan royalties or supply payments based on supply of TYMLOS for sale in Japan) during any consecutive 12-month period prior to December 31, 2025.

Including the CVR payment, Radius shareholders will receive up to an aggregate of $547 million in cash. The upfront payment at closing represents a premium of 45% over the 30-day volume-weighted average price (VWAP) of Radius's common stock, and inclusive of the CVR payment, a 59% premium.

"The acquisition of Radius by Gurnet Point and Patient Square provides our shareholders with attractive, immediate value at a compelling premium, in addition to the potential future upside of TYMLOS through the CVR," said Owen Hughes, Chairman of Radius Health. "Today's announcement of the acquisition, which has been unanimously approved by the Radius Board, is the culmination of a thorough and rigorous strategic review process conducted over nine months by the Board and management with the assistance of external advisors. The extensive review included outreach to and interaction with multiple strategic parties and financial sponsors on all parts of our business. We are confident that this transaction maximizes value for shareholders and provides the clearest path forward for Radius."

Kelly Martin, Chief Executive Officer of Radius, said, "This transaction provides shareholders with immediate value in addition to the potential future upside from the CVR. Over the past two years we have worked tirelessly to improve the business fundamentals of Radius. We are proud of what Radius and its dedicated employees have achieved to date."

Travis Wilson, Partner at Gurnet Point, said, "We are delighted to be acquiring Radius and providing additional resources to the Company during this critical time. We fully believe in the value of the Company's portfolio and are looking forward to working closely with the Company to deliver a positive impact for patients."

Jim Momtazee, Managing Partner at Patient Square Capital, stated, "Our investment approach is centered on backing businesses that improve patient lives and consistent with that we are excited to work with Radius to expand access to an important therapeutic."

Tender Offer and Transaction Details
Under the terms of the merger agreement, an entity jointly owned by Gurnet Point and Patient Square will promptly commence a tender offer for all outstanding shares of Radius common stock at a price of $10.00 per share in cash plus a CVR of $1.00 per share that is payable upon TYMLOS® (abaloparatide) net sales reaching $300 million (inclusive of U.S. sales and Japan royalties or supply payments based on supply of TYMLOS for sale in Japan) during any consecutive 12-month period prior to December 31, 2025. Radius' Board of directors unanimously recommends that Radius shareholders tender their shares in the tender offer. Upon the successful completion of the tender offer, the acquisition subsidiary will be merged into Radius, and any remaining shares of common stock of Radius that were not tendered in the tender offer will be canceled and converted into the

right to receive the same consideration payable in the tender offer.

The transaction, which has been unanimously approved by the members of the Radius Board, is expected to close in the third quarter of 2022, subject to customary closing conditions, including Radius shareholders tendering a minimum number of shares and receipt of regulatory approvals. The transaction is not subject to a financing condition.

Following completion, Radius will become a private company and will no longer be subject to the reporting requirements of the Securities Exchange Act of 1934, as amended, nor be traded on Nasdaq Global Market. The Company plans to maintain operations in the Boston, MA and Wayne, PA areas.

Advisors
J.P. Morgan Securities LLC acted as exclusive financial advisor to Radius and Ropes & Gray LLP is serving as its legal advisor. Goldman Sachs & Co. LLC acted as exclusive financial advisor to Gurnet Point Capital and Patient Square Capital. Latham & Watkins, LLP is serving as Gurnet Point Capital's legal advisor. Kirkland & Ellis LLP is serving as Patient Square Capital's legal advisor. Covington & Burling LLP is serving as OrbiMed's legal advisor.

24.     Defendants filed the Recommendation Statement with the SEC, which omits material information regarding the Proposed Transaction.

<u>Financial Projections</u>

25.     The Recommendation Statement omits material information regarding Radius's financial projections, specifically: the line items underlying the financial projections and the individual inputs and assumptions underlying the reductions thereto.

26.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

<u>Financial Analyses</u>

27.     The Recommendation Statement omits material information regarding the financial analyses conducted by J.P. Morgan Securities LLC ("J.P. Morgan").   When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

28.     Regarding J.P. Morgan' Public Trading Multiples analysis, the Recommendation Statement fails to disclose the individual multiples and metrics for the companies utilized by J.P. Morgan.

29.     Regarding J.P. Morgan's Selected Transactions Analysis, the Recommendation Statement fails to disclose the individual multiples and metrics for the transactions utilized by J.P. Morgan.

30.     Regarding J.P. Morgan's Discounted Cash Flow Analysis, the Recommendation Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates and terminal growth rates utilized by J.P. Morgan; (ii) the reasons an implied terminal asset value was not assigned; and (iii) the adjustments for option exercise proceeds, outstanding restricted stock units, performance restricted stock units, performance stock units, and NOLs utilized by J.P. Morgan.

<u>Potential Conflicts of Interest</u>

31.     The Recommendation Statement fails to disclose the timing and details of all discussions regarding post-transaction employment, directorships, and benefits.

## COUNT I

### (Claim for Violation of Section 14(e) of the Exchange Act Against Defendants)

32.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

33.     Section 14(e) of the Exchange Act states, in relevant part, that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

34.     Defendants disseminated the misleading Recommendation Statement, which contained statements that, in violation of Section 14(e) of the Exchange Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

35.     The Recommendation Statement was prepared, reviewed, and/or disseminated by defendants.

36.     The Recommendation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

37.     By virtue of their positions within the Company and/or roles in the process and the preparation of the Recommendation Statement, defendants were aware of this information and their duty to disclose this information in the Recommendation Statement.

38.     The omissions in the Recommendation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

39.     Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Recommendation Statement, causing statements therein to be

materially incomplete and misleading.

40.     By reason of the foregoing, defendants violated Section 14(e) of the Exchange Act.

41.     Because of the false and misleading statements in the Recommendation Statement,

plaintiff is threatened with irreparable harm.

42.     Plaintiff has no adequate remedy at law.

## COUNT II

### (Claim for Violation of 14(d) of the Exchange Act Against Defendants)

43.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44.     Section 14(d)(4) of the Exchange Act states:

Any solicitation or recommendation to the holders of such a security to accept or
reject a tender offer or request or invitation for tenders shall be made in accordance
with such rules and regulations as the Commission may prescribe as necessary or
appropriate in the public interest or for the protection of investors.

45.     Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in
section 14(d)(1) of the Act with respect to a tender offer for such securities shall
include the name of the person making such solicitation or recommendation and
the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101)
or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be

necessary to make the required statements, in light of the circumstances under which they are

made, not materially misleading."

46.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because

it omits the material facts set forth above, which renders the Recommendation Statement false

and/or misleading.

47.     Defendants knowingly or with deliberate recklessness omitted the material

information set forth above, causing statements therein to be materially incomplete and

misleading.

48.     The omissions in the Recommendation Statement are material to plaintiff, and he will be deprived of his entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

49.     Plaintiff has no adequate remedy at law.

### COUNT III

**(Claim for Violation of Section 20(a) of the Exchange Act
Against the Individual Defendants)**

50.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Radius within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Radius and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

53.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and

exercised the same.  The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.   They were thus directly connected with and involved in the making of the Recommendation Statement.

54.      By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

55.      As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.

56.      As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

57.      Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment and relief as follows:

A.      Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to file a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: July 25, 2022

**RIGRODSKY LAW, P.A.**

By:   */s/ Gina M. Serra*

**OF COUNSEL:**

**GRABAR LAW OFFICE**
Joshua H. Grabar
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 507-6085
Email: jgrabar@grabarlaw.com

Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: gms@rl-legal.com

*Attorneys for Plaintiff*